RECEIVED
USDC CLERK, CHARLESTON, SC

2007 NOV 19  A 11: 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Eric Johann Nixon, #247519, | ) C. A. No. 2:06-2560-CMC-RSC |
| Plaintiff, | ) |
| -versus- | ) **REPORT AND RECOMMENDATION** |
| Derrick W. Applegate, Narcotics Officer with Lexington County Sheriff's Office; John J. Jones, Narcotics Officer with Lexington County Sheriff's Office; NFN Oxendine, Deputy with Lexington County Sheriff's Department; and D. Amick, Sergeant with Lexington County Sheriff's Office, | ) |
| Defendants. | ) |

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) brought by a state prisoner proceeding pro se and in forma pauperis, is before the undersigned United States

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

Magistrate Judge for a report and recommendation on the defendants' motions for summary judgment. 28 U.S.C. § 636(b).

The plaintiff, Eric Johann Nixon, sued Derrick W. Applegate, Narcotics Officer with Lexington County Sheriff's Office; John J. Jones, Narcotics Officer with Lexington County Sheriff's Office; NFN Oxendine, Deputy with Lexington County Sheriff's Office; and D. Amick, Sergeant with Lexington County Sheriff's Office, on September 14, 2006, and alleged both state law tort claims under the South Carolina Tort Claims Act, and violations of his rights to be free of unreasonable searches and seizures pursuant to the Fourth Amendment of the Constitution of the United States. Nixon seeks millions of dollars in damages.

Defendants Applegate, Jones, and Amick were served and filed an answer. Nixon filed another complaint in which he sought to amend the complaint in the instant action to eliminate any state law claims. On February 27, 2007, the Honorable Cameron McGowan Currie, United States District Judge, ordered that the second complaint be docketed as an amended complaint in this action and that the three defendants who had been served and had answered were ordered to answer the amended complaint. Judge Currie noted that defendant Oxendine did not appear to have been served, and she ordered that the plaintiff provide the Clerk with an amended summons for issuance to defendant Oxendine by March 9, 2007.

Defendant Oxendine was served on June 28, 2007. All defendants answered the amended complaint.

On June 19, 2007, Applegate, Jones, and Amick filed a motion for summary judgment along with exhibits and affidavits. On July 3, 2007, the plaintiff was provided copies of the defendants' motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed a response in opposition to the defendants' motion on July 18, 2007, and on July 30, 2007, the defendants filed a reply.

On October 17, 2007, defendant Oxendine filed a motion for summary judgment, and on October 19, 2007, Plaintiff was provided another Roseboro order. on November 1, 2007, Plaintiff filed a response in opposition to the motion. Hence, it appears consideration of the motions is appropriate.

### **SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322.

3

The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by

4

a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

### **FACTS**

The plaintiff's claims arise out of his arrest on December 4, 2003, for Trafficking in Crack Cocaine, and Unlawful Possession of a Pistol. See, Complaint; see also, Def. Exhibit A (state court indictments).

On December 4, 2003, Defendant Applegate received an anonymous call from a citizen reporting suspicious activity at the Comfort Inn Hotel, room 127. See, Affidavit of Applegate, ¶ 9. After receiving the call, Defendant Applegate set up surveillance of the hotel room. Id. at ¶ 12. During the investigation, Defendant Jones came to assist Defendant Applegate in the surveillance. Id. at ¶ 15. After observing several incidents of what they considered to be suspicious behavior, Defendants Applegate and Jones decided to approach the hotel room and speak with the occupants. Id. at ¶¶ 14-18. Neither defendant was in uniform, and both had their firearms concealed as they approached the hotel room. Id. Applegate was wearing a digital recorder and the entire incident was recorded. Id.

The two officers knocked on the hotel room door and were given permission to come inside. Id. at ¶¶ 18-20. Once inside the two officers found two individuals in the room, one was the plaintiff and the other an unnamed juvenile. Id. at ¶ 22. The

plaintiff was aware the defendants were police.  The juvenile was told to stand up, which he did.  He was searched.  After searching the juvenile and finding nothing illegal, Applegate asked Plaintiff "You don't have anything on your person?  You mind standing up for me right quick and I'm gonna get out of your hair?"  Plaintiff then stood up and outstretched his arms.  Id. at ¶ 38.  Defendant Applegate patted the plaintiff down and found crack cocaine on the plaintiff.  Id. at ¶ 41.  Defendant Applegate then placed the plaintiff under arrest.  Following the arrest, Applegate found a gun on the plaintiff.

The officers called for a car and driver to transport the plaintiff to the Lexington County Detention Center (LCDC).  Defendant Oxendine arrived at the scene and transported the plaintiff to the LCDC.  Oxendine did not investigate the legality of Plaintiff's search or arrest.  Similarly, Defendant Amick was not involved in the investigation, search, or seizure of the Plaintiff, but was the supervisor who signed off on Applegate's report of the events.

The plaintiff was booked into the LCDC on December 4, 2003, after being arrested in the hotel room.  Id. at ¶ 44.  He was charged with Trafficking in Crack Cocaine, and Unlawful Possession of a Pistol.  See, Exhibit B (arrest warrants).  Plaintiff was indicted on the charges by the state Grand Jury on April 5, 2004.  See, Exhibit A (state court indictments).

However, those indictments were later nolle prossed because the charges were adopted by the federal government and Plaintiff was indicted in federal court. <u>See</u>, 3:04-CR-00131-CMC-12, <u>United States v. Eric Nixon, et al.</u> It is unclear when Plaintiff was released form the LCDC, but he was arrested by the U. S. Marshal on May 5, 2004, and he did not make bond.

He pled not guilty on August 10, 2004, and on August 12, 2004, he moved to suppress the cocaine and gun as the product of an illegal search. The plaintiff argued that he did not give consent to Applegate to search his person, thus rendering the search violative of the fourth amendment's prohibition against unreasonable searches and seizures. The government argued that although Plaintiff did not verbally consent to the search, he did consent by implication when he stood and extended his arms. The issues were fully briefed and oral argument was had on the suppression motion on September 13, 2004, before the trial judge, Judge Currie. On September 16, 2004, Judge Currie ruled that the actions of the plaintiff did not constitute a valid and informed consent to search, and Judge Currie suppressed the use of the evidence found during the search in the criminal trial. <u>See</u>, 3:04-CR-00131-CMC-12, Docket Entry No. 250. Judge Currie wrote:

> Although the officers had consent to enter the motel room, Defendant Nixon was not asked if he would agree to a search of his person. Rather, he was told "You mind standing up for me right quick, and I'm gonna ger out your hair." His only response was to stand and hold out his arms.

> Consent must be shown to be more than a mere acquiescence to apparent lawful authority, Bumper v. North Carolina, 391 U.S. 543, 546-47 (1968). While the government argues that there was implied consent, no cases to support that contention have been submitted despite the court granting a two day period for further research. Nor has the court's own research located any case where implied consent was found in circumstances such as these.

This suit against the officers followed.

## DISCUSSION

A review of the record and relevant case law reveals that summary judgment in favor of defendant Applegate in his individual capacity should be denied and summary judgment in favor of Applegate in his official capacity should be granted. Summary judgment should be granted to defendants Jones, Oxendine, and Amick in both capacities.

### "PERSON" REQUIREMENT IN § 1983

The defendants are employees of the Office of the Lexington County Sheriff, and are thus treated as "arms of the State." Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996); Cone v. Nettles, 308 S.C. 109, 417 S.E.2d 523 (1992). To the extent Plaintiff is suing the defendants in their official capacities, his claims fail as the defendants are not "persons" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

RESPONDEAT SUPERIOR

A review of the complaints reveal that the plaintiff seeks to impose impermissible vicarious liability on Defendant Amick. The only allegations set forth by the plaintiff with regards to Defendant Amick, are that he should have questioned the investigation of the plaintiff by the officers under his supervision and found it to have been illegal. The plaintiff does not set forth any personal interactions on the part of Defendant Amick, and, therefore, the Plaintiff has failed to establish any theory of liability on the part of Defendant Amick except that he is liable by virtue of his position as the supervisor of the other defendants.

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), the United States Supreme Court held that a claim based on the doctrine of respondeat superior does not give rise to a claim under 42 U.S.C § 1983. Thus, it is clear that the personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. The Plaintiff has failed to allege or prove the direct participation on the part of Defendant Amick. Indeed, Plaintiff admits as much in his Amended Complaint; Defendant Amick was not involved in the investigation, search, or seizure of the Plaintiff. He should be dismissed.

PERSONAL PARTICIPATION

Similarly, since liability cannot be vicarious, a § 1983 plaintiff must show that each particular defendant personally deprived him of a constitutionally protected right. See, e.g., Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). In this case Plaintiff cannot show that either defendant Jones or defendant Oxendine deprived Plaintiff of a constitutional right by failing to perform an act which they were legally required to do and which was the cause in fact of Plaintiff's alleged injury. Jones was on the scene, but his status as a witness without more provides no basis for liability. Oxendine merely transported Plaintiff to the jail. There is no proof that by performing his job to drive Plaintiff to LCDC, he violated any of his rights. Therefore, Jones and Oxendine are entitled to judgment as a matter of law.

THE FOURTH AMENDMENT CLAIM AGAINST APPLEGATE IN HIS
PERSONAL CAPACITY

Plaintiff's claim centers on the legality of defendant Applegate's search of his person and his subsequent arrest. The Fourth Amendment prohibits "unreasonable" searches and seizures of "persons, houses, papers, and effects." The general rule is that, to be reasonable, a search must be authorized by a valid warrant. Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164 (1987). However, this rule has numerous exceptions. The

exception at issue here[2] is the "consent exception". That is, no warrant is required if the suspect gives an officer a voluntary informed consent to search. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Where valid consent is given, fourth amendment rights are waived, and the search may be conducted without probable cause or a warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

## QUALIFIED IMMUNITY

The defendant has moved for summary judgment in part on the basis of his assertion that he is entitled to qualified immunity from suit in his individual capacity. It does not appear that Defendant has carried his burden to establish this affirmative defense.

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[2] Other exceptions include if exigent circumstances exist, Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371 (1980), if the search is limited to a frisk and the officer has reasonable suspicion to believe that the suspect has a weapon, Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968), if the object of the search is an automobile and the officer has probable cause to believe that it contains contraband, Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485 (1996), or if the search is conducted incident to a valid arrest, United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467 (1973). Further, the Supreme Court has held that the fourth amendment is not implicated unless the individual has a reasonable expectation of privacy in the area that is searched. Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, (1989).

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This immunity "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.' Wilson v. Collins, 141 F.3d 111, 114 (4th Cir. 1998) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Government officials performing a discretionary function are immune from liability for civil damages unless (i) the officers' conduct violates a federal statutory or constitutional right; (ii) the right was clearly established at the time of the conduct; and (iii) an objectively reasonable officer would have understood that the conduct violated that right. Milstead v. Kibler, 243 F.3d 157, 161 (4th Cir. 2001) (citing Wilson v. Layne, 526 U.S. 603, 614-15, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

The first step in analyzing whether qualified immunity exists is to determine whether the plaintiff has alleged a violation of a statutory or constitutional right. Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); see also, County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (noting that if

courts were to rule on qualified immunity without determining the constitutionality of the challenged conduct, "standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals").

Next, the trial court must assess whether the right at issue was clearly established at the time of the breach. The court should focus upon "the right [not] at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Wiley v. Doory, 14 F.3d 993, 995 (4th Cir.1994) (internal quotations omitted) (quoting Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992)); see also, Anderson v. Creighton, 483 U.S. 635, 639-41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). This does not mean, however, that an official will be protected by qualified immunity unless the very act in question has previously been held unlawful. Anderson, 483 U.S. at 640, 107 S.Ct. 3034. Rather, the unlawfulness must be apparent in light of pre-existing law. Id.

Only if the plaintiff has alleged a violation of a clearly established right should the court next determine whether a reasonable person in the official's position would have known that his actions violated that right. DiMeglio v. Haines, 45

F.3d 790, 794 n. 1 (4th Cir. 1995). When the inquiry reaches this juncture, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19, 102 S.Ct. 2727.

Here, there has been a judicial determination that the complained of search failed to pass constitutional muster because Plaintiff did not give an impliedly valid consent to the search. Plaintiff has alleged a constitutional violation. Further, Supreme Court case law long ago established the contours of a valid consent to search and the illegality of a non-consensual search. Bumper v. North Carolina, 391 U.S. 543 (1968). Under these facts it appears that Applegate is not entitled to qualified immunity.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that summary judgment be denied to defendant Applegate in his individual capacity and that summary judgment be granted defendant Applegate in his official capacity. Summary judgment should be granted to defendants Jones, Oxendine, and

Amick in all capacities.  Lastly, any claims under state law should be deemed withdrawn by the plaintiff.

                                      Respectfully Submitted,

                                      Robert S. Carr  
                                      United States Magistrate Judge

Charleston, South Carolina

November 19, 2007

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).