IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Eric Johann Nixon, #247519, ) | C/A NO. 2:06-2560-CMC-RSC |
| )    | |
| Plaintiff, ) | |
| )    | **OPINION and ORDER** |
| v. )    | |
| )    | |
| Derrick W. Applegate, Narcotics Officer ) | |
| with Lexington County Sheriff's Office; ) | |
| John J. Jones, Nacotics Officer with ) | |
| Lexington County Sheriff's Office; ) | |
| NFN Oxendine, Deputy with Lexington ) | |
| County Sheriff's Office; and D. Amick, ) | |
| Sergeant with Lexington County Sheriff's ) | |
| Office, ) | |
| )    | |
| Defendants. ) | |
| _____ ) | |

Plaintiff initiated this § 1983 action against Defendants, seeking damages "for [an] illegal search and seizure that caused Plaintiff to suffer approximately 10 months unlawful [custody] and confinement in the Lexington County Detention Center."[1] Compl. at 3 (Dkt. # 1, filed Sept. 14, 2006). Plaintiff seeks compensatory and punitive damages totaling $ 750,000. Dkt. # 15 (filed Feb. 27, 2007). This matter is before the court on Defendants' motions for summary judgment.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this matter was referred to United States Magistrate Judge Robert S. Carr for pre-trial proceedings and a Report and Recommendation ("Report"). On November 19, 2007, the Magistrate Judge issued a Report recommending that summary judgment be granted as to all Defendants except Derrick W.

---

[1] As is relevant to this suit, Plaintiff successfully argued in a previous criminal case that Defendant Applegate violated the Fourth Amendment when he searched Plaintiff without consent, recovering narcotics and an illegal firearm. This court suppressed the gun and drugs and criminal charges were subsequently dismissed by the prosecution. Plaintiff's success on that motion in a criminal case is not dispositive of the matter of qualified immunity in this case.

Applegate. As to Defendant Applegate, the Magistrate Judge recommended that summary judgment be granted to Applegate in his official capacity, but that summary judgment based on qualified immunity be denied as to Applegate in his individual capacity. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Both Plaintiff and Defendant Applegate have filed objections to the Report

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and the parties' objections, the court disagrees with the Magistrate Judge that Applegate is not entitled to summary judgment based on qualified immunity. Therefore, the court finds that all Defendants are entitled to summary judgment in this matter.

**Qualified Immunity – Standard**

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Thus, determining whether an official is

entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to Plaintiff, the facts alleged show that the official's conduct violated a constitutional right. *Id*. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and Plaintiff cannot prevail. *Id*. If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id*. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*. "If the right was not clearly established in the 'specific context of the case'–that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'–then the law affords immunity from suit." *Id*. (quoting *Saucier*, 533 U.S. at 201).

**Reasonableness of Search**

The critical issues for purposes of summary judgment relating to the initial search are whether the search of Plaintiff was reasonable, and (if not), whether an objectively reasonable officer would have known that his actions were unreasonable.

As noted above, for the search of Plaintiff to have been reasonable, it must have been conducted either pursuant to a lawfully issued warrant, or as a result of the officer obtaining an individual's voluntary consent, *Schneckloth v. Bustamante*, 412 U.S. 218, 219 (1973). Taking the facts in the light most favorable to Plaintiff, on December 4, 2003, after receiving a tip regarding suspicious activity, Defendant Derek W. Applegate (Applegate) was conducting police surveillance on Room 127 of the Comfort Inn on Piney Grove Road in Columbia, South Carolina. After

3

observing what he considered to be drug trafficking activity, Applegate radioed for assistance. Deputy John E. Jones, Jr. ("Jones") arrived, and the officers, who were wearing plain clothes, with their weapons and handcuffs covered, decided to initiate a "knock and talk." The officers approached the motel room and knocked. An occupant of the room (not Plaintiff) answered the door. Applegate and Jones identified themselves as law enforcement officers, and the occupant allowed Applegate and Jones to enter the room. Applegate observed Plaintiff and the other occupant of the room quickly grab their coats and put them on, even though they were inside the motel room, which was warm.

After searching the room[2] and its other occupant, there is no dispute as to what Applegate said to Plaintiff.[3] Applegate's words to Plaintiff were: "You don't have anything on your person? You mind standing up for me right quick, and I'm gonna get out your hair." Mem. Supp. of Summ. J. at 2 (Dkt. # 20-1, filed June 19, 2006). Applegate avers that Plaintiff stood and "put his arms up in the air, as if preparing to be searched. I understood Mr. Nixon's actions to be consent to my request to search his person and I then began searching his person." Applegate Aff. at ¶¶ 38-39. Plaintiff contends that this search was accomplished without his consent. Resp. at 2-3 (Dkt. # 26, filed July 18, 2007).

---

[2]Plaintiff contends, in an unsworn response that he "never gave the Police consent to search his room," Resp. at 2 (Dkt. # 17, filed Mar. 26, 2007), but Applegate avers that he "asked [for], and received, permission to look around the room." Aff. of Derek W. Applegate (hereafter "Applegate Aff.") at ¶ 24 (Dkt. # 20-3, filed June 19, 2007). Defendant Jones avers that "[b]oth occupants consented to our request to look around the room." Aff. of John E. Jones, Jr. ¶ 22 (Dkt. # 20-4, filed June 19, 2007).

[3]The entire encounter between Plaintiff and Applegate was recorded by audio device. Defendants have not provided this court with a copy of this audio recording.

4

There is no dispute that consent to search must be shown to be more than mere acquiescence to apparent lawful authority. *Bumper v. North Carolina*, 391 U.S. 543, 546-47 (1968). The Fourth Circuit has made it clear that consent may be implied in appropriate circumstances. *See United States v. Williams*, 106 F.3d 1173, 1177-78 (4th Cir.1997) (finding implied consent to open cooperating witness's mail from relationship with police); *United States v. Smith*, 30 F.3d 568, 571 (4th Cir.1994) (finding implied consent from unlocking car door); *United States v. Wilson*, 895 F.2d 168, 170-72 (4th Cir.1990) (finding implied consent for pat down from nonverbal gesture of raising arms); *United States v. Haynie*, 637 F.2d 227, 229-31 (4th Cir.1980) (finding implied consent from entry into airport x-ray screening process); *United States v. Riley*, 554 F.2d 1282, 1283 (4th Cir.1977) (finding implied consent from fourth class mailing). These cases finding implied consent fall into three general categories: cases in which there was a specific request by police officers and a nonverbal affirmative response by an individual (*Smith* and *Wilson*), cases in which an individual took some affirmative act that directly exposed his or her property to inspection (*Haynie* and *Riley*), and a case in which there was a working relationship between police officers and a cooperating individual (*Williams*). This case does not fall neatly into any of these categories.

Accordingly, the court finds that a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could find that Plaintiff's Fourth Amendment right to be free from unreasonable search was violated by Defendant Applegate.

The second part of a qualified immunity analysis provides that this court examine (if a constitutional violation is shown) whether such right, in the context of the specific incident, was clearly established at the time of the alleged offending actions of the officer. In other words, it is a legal question for the court to determine whether, based upon a specific set of facts, an objectively

reasonable officer should have known of the illegality of his conduct. *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005).

The facts in the record, taken in the light most favorable to Plaintiff, are that Applegate had conducted surveillance of the motel room for some period of time and had observed suspicious activity that he felt was consistent with drug trafficking; that Applegate and Jones had entered the motel room upon consent; that Applegate and Jones discovered a motor scooter with its ignition removed, a crack pipe, and several empty cigar wrappers (commonly used to make marijuana "blunts") in the room; that Applegate had conducted a consented-to search of the other occupant of the room as Plaintiff watched; that in response to Applegate's statements, "You don't have anything on your person? You mind standing up for me right quick, and I'm gonna get out your hair," Plaintiff stood up and held out his arms; and that Applegate believed Plaintiff's actions were evidence of his (Plaintiff's) consent to search.

Though the question of whether Plaintiff actually consented to the search is in dispute, the ultimate question for this court is not whether Applegate was correct in his assumption that Plaintiff had consented to the request to search, but whether he (Applegate) could have reasonably believed under the circumstances that he had obtained Plaintiff's consent to search.

There is no allegation of any threat or coercion on behalf of Applegate. Not only did Plaintiff stand up when he was so instructed, but he held out his arms in a gesture understood by Applegate to be an acquiescence to being searched. Additionally, not only did Plaintiff not protest during the search, but he even "directed [Applegate] to a concealed pocket inside his jacket." Aff. of Derek W. Applegate (hereafter "Applegate Aff.") at ¶ 40 (Dkt. # 20-3, filed June 19, 2007). Given the circumstances, the court finds that Applegate could have reasonably believed that he had consent to

6

search Plaintiff. Therefore, Applegate is entitled to summary judgment based on qualified immunity grounds because he reasonably believed that Plaintiff had consented to the search.

## Reasonableness of Arrest

The same initial inquiry as to the reasonableness of the search of Plaintiff applies to Plaintiff's arrest; that is, whether the arrest of Plaintiff was reasonable, and (if not), whether an objectively reasonable officer would have known that his actions were unreasonable.

During the search, Applegate discovered that Plaintiff was secreting crack cocaine and a firearm. He then placed Plaintiff under arrest. Plaintiff's complaint argues that this arrest was without probable cause, as it was based upon evidence discovered as a result of a constitutionally unreasonable search. Plaintiff essentially seeks to apply the exclusionary rule to this civil action, as he wants the court to evaluate the arrest as if no evidence of criminal activity had been uncovered.

The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights." *United States v. Leon*, 468 U.S. 897, 906 (1984). "The rationale behind the exclusionary rule is 'to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved,' and application of the rule is 'restricted to those areas where its remedial objectives are thought to be most efficaciously served.'" *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (quoting *United States v. Janis*, 428 U.S. 433, 446-47 (1976)). "The deterrence achieved by applying the exclusionary rule to criminal cases and by allowing civil liability for Fourth Amendment violations is sufficient; any additional deterrence to be gained by applying the rule to civil cases would be outweighed by the societal cost of excluding the evidence." *Witwell v. Hoyt*, 2006 WL 469634 at *3 (W.D. Wis. 2006).

"The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999). Based on the deterrent rationale and the above and other persuasive precedent, the court will not exclude the evidence discovered in its analysis of the reasonableness of Applegate's arrest of Plaintiff. In other words, for this court to exclude the evidence of Plaintiff's criminal activity found by Applegate during the (albeit unreasonable) search would be to apply the exclusionary rule to this civil case. The Supreme Court has "never applied the exclusionary rule to civil cases, state or federal." *Wren*, 130 F.3d at 1158. *See also Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) (agreeing with *Townes*); *Townes*, 176 F.3d at 149 ("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *Padilla v. Miller*, 142 F. Supp. 2d 479, 492 (M.D. Pa. 2001).

Therefore, to the extent that Plaintiff argues that his arrest and subsequent incarceration were not based upon probable cause, this argument is rejected. Therefore, Defendant Applegate's motion for summary judgment is granted as relates to Plaintiff's arrest as there was no violation of Plaintiff's constitutional rights.

### Summary

Defendants motions for summary judgment are **granted** and this matter is dismissed with prejudice.

**IT IS SO ORDERED.**

                    s/ Cameron McGowan Currie
                    CAMERON McGOWAN CURRIE
                    UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 19, 2008

C:\Documents and Settings\Guest\Local Settings\Temp\notesE1EF34\~8213536.wpd